UNITED STATES DISTRICT COURT 13   CV 3689
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

KEVIN LEE; RICHARD LIM; CLIFFORD KIM;            12 Civ. _____ (ALC)
and HWA TEN SHIH;

                Plaintiffs,            **COMPLAINT**

        -against-

SUK INCORPORATED d/b/a/ RAINBOW
LIMOUSINE SERVICE, and SEONGBAE DAN,

            Defendants.

————————————————————————x

1.      Plaintiffs Kevin Lee, Richard Lim, Clifford Kim, and Hwa Ten Shih, by and through their attorneys, the Urban Justice Center and Cuti Hecker Wang LLP, for their Complaint allege against Defendants Suk Incorporated and Seongbae Dan as follows:

## NATURE OF THE ACTION

2.      This case is about the workplace rights of livery car drivers employed by Suk Incorporated, the operator of Rainbow Limousine Service (collectively "Rainbow"). Plaintiffs are low-income Korean and Chinese immigrants with little English skills. Rainbow exploited Plaintiffs' vulnerability, desperation for income, and lack of awareness about their statutory rights by inducing them to enter into sham "franchise" agreements and subjecting them to employment terms that brazenly violated federal and state wage and hour laws.

3.      This lawsuit seeks to compel Rainbow and its unscrupulous principals to pay Plaintiffs all of the wages they lawfully earned, including minimum wages and thousands of hours of overtime pay, and to reimburse Plaintiffs for all of the employment-related expenses

1

they incurred during their employment, together with statutory liquidated damages, interest, and attorneys' fees.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1332.

5.      This Court also has supplemental jurisdiction over Plaintiffs' New York Labor Law claims pursuant to 28 U.S.C. § 1367 because those claims closely relate to the federal labor law claims, having arisen from a common nucleus of operative facts, such that the New York Labor Law claims form part of the same case or controversy.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

7.      Plaintiff Kevin Lee is an individual residing in New Jersey.  From approximately June 2010 through approximately March 2012, Mr. Lee was employed by Rainbow as a livery car driver.  He typically worked 7 days per week for approximately 16-17 hours per day on weekdays and for approximately 12 hours per day on weekends.  He is a covered employee within the meaning of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").

8.      Plaintiff Richard Lim is an individual residing in Queens, New York.  From approximately July 2008 through approximately July 2010, Mr. Lim was employed by Rainbow as a livery car driver.  He typically worked at least 6 and usually 7 days per week for approximately 15-16 hours per day.  He is a covered employee within the meaning of the FLSA and the NYLL.

2

9.     Plaintiff Clifford Kim is an individual residing in New Jersey.  Mr. Kim worked for Rainbow as a livery car driver off and on beginning in approximately 1988.  Most recently, Mr. Kim was employed by Rainbow as a livery car driver from approximately 2007 through approximately 2009 and again from approximately June 2010 through approximately October 2012.  He typically worked 7 days per week for up to 16-17 hours per day.  He is a covered employee within the meaning of the FLSA and the NYLL.

10.     Plaintiff Hwa Ten Shih (a.k.a. George Shih) is an individual residing in Queens, New York.  From approximately 1998 through approximately June 2010, Mr. Shih was employed by Rainbow as a livery car driver.  He typically worked 6 days per week for approximately 10-12 hours per day.  He is a covered employee within the meaning of the FLSA and the NYLL.

11.     Defendant Suk Incorporated is a domestic corporation headquartered at 8 West 38th Street in New York, New York.  Suk Incorporated operates the livery car service, Rainbow Limousine Service, at issue in this action.

12.     Upon information and belief, at all times relevant to this litigation, Suk Incorporated is an enterprise engaged in interstate commerce within the meaning of the FLSA in that it: (i) has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) has had an annual gross volume of sales made or business done of not less than $500,000.

13.     Defendant Seongbae Dan is a natural person who, at all relevant times, exerted substantial overall operational control of Rainbow, possessed a substantial ownership interest in Rainbow, controlled significant functions of the business operated by Rainbow, made hiring and

firing decisions on behalf of Rainbow, and determined the required hours and compensation of the Plaintiffs herein.

## FACTUAL ALLEGATIONS

14.     Rainbow operates a livery car service that primarily serves Asian-American communities in the New York City area.

15.     Unlike a taxicab, one cannot hail a Rainbow livery car on the street.

16.     Rainbow's drivers do not cruise for fares.

17.     Customers must call Rainbow and request that a Rainbow driver be dispatched to a specific pick-up location.

18.     On information and belief, Rainbow is licensed by the New York City Taxi and Limousine Commission ("TLC") as a Livery Base Station.

19.     On information and belief, Rainbow has been issued a "For-Hire Vehicle Base License" by the TLC.

20.     On information and belief, the livery cars operated by Rainbow are licensed and regulated as "For-Hire Vehicles," not "Taxicabs."

21.     Rainbow advertises itself as a luxury livery car service, not as a taxicab service.

22.     Rainbow operates high-end luxury cars, primarily Lincoln Town Cars and Chevrolet Suburbans.

23.     The fares that Rainbow charges its customers, and that the Plaintiffs collected from those customers, are set by Rainbow.  Plaintiffs were not authorized to set or determine the fares charged to Rainbow's customers.

24.     Rainbow's fares are based on contracts signed with each of Rainbow's customers. Rainbow's livery cars do not have meters and do not operate on a zone basis.

25.     Rainbow contracts and establishes accounts with its customers to pick them up on a recurrent basis.  Rather than paying fares directly to Rainbow drivers, these recurrent customers pay their fares by signing vouchers that are charged to their accounts.

26.     On information and belief, all or almost all of Rainbow's total business is comprised of these recurrent transportation contracts.

27.     On information and belief, Rainbow employs approximately 55 livery car drivers.

28.     Rainbow required each Plaintiff to sign a purported "franchise agreement."  This agreement consisted of eleven pages of purported terms that were written in English and not translated into Plaintiffs' native languages.

29.     Plaintiffs' first languages are Korean and Chinese.  Plaintiffs have limited English skills and were incapable of understanding or assessing the terms of the purported franchise agreement.

30.     Defendants knew or should have known that Plaintiffs did not understand the terms of the purported franchise agreement.

31.     Plaintiffs were forced to sign these purported franchise agreements at the time of their presentation.  They were not permitted to take the agreements outside of Defendants' offices, much less seek the advice of an attorney or other advisor.

32.     Most of the Plaintiffs were not even shown the full franchise agreement, but rather only were presented with the signature page for execution.

33.     Defendants did not provide Plaintiffs with a franchise prospectus or with any financial disclosure documents of any kind prior to their signing the purported franchise agreements.

34.     Plaintiffs were required to pay a purported "franchise fee," typically in the amount of ten thousand dollars, for the cost of the purported franchise.

35.     Plaintiffs generally were "lent" the amount of the "franchise fee," with payments on these "loans" deducted from their periodic wage payments.  Some Plaintiffs paid significant initial deposits toward the "franchise fees."

36.     Plaintiffs had these "franchise fees" deducted from their wage payments up until the very end of their employment with Rainbow.

37.     At no time prior to Plaintiffs making these "franchise fees" payments were Plaintiffs provided with a copy of any franchise prospectus.

38.     Rainbow did not pay Plaintiffs any base salary or hourly wages.  Instead, Plaintiffs were paid 77% of the fares that the customers paid for their rides.  Rainbow kept the remaining 23%.

39.     Rainbow also unlawfully kept 20% of the "service charge" that its customers were required to pay, in violation of the New York Labor Law's prohibition of employers demanding or accepting any portion of employees' tips.

40.     Rainbow also deducted from Plaintiffs' wages $90.00 per month for purported "radio fees" and additional amounts for purported "voucher fees."

41.     Rainbow generally paid Plaintiffs twice per month.

42.     Rainbow strictly controlled substantially all of the material aspects of its employer-employee relationship with its drivers and imposed onerous terms on Plaintiffs that severely limited their discretion as to how and when they performed their work.

43.     The conditions imposed by Rainbow also unlawfully shifted many of the costs of running its business onto the drivers.

44.     Plaintiffs were required to purchase or lease their own vehicles.

45.     Rainbow permitted Plaintiffs to operate only certain kinds of luxury automobiles, such as Lincoln Town Cars and Chevrolet Suburbans.

46.     Plaintiffs also were required to pay their own expenses, such as gas, insurance, and vehicle maintenance.

47.     Rainbow generally expected its drivers to work at least six if not seven days per week.

48.     Rainbow assigned drivers to work certain shifts, such as night duty on the weekends.

49.     If Plaintiffs informed Rainbow that they were too sick to come to work, Rainbow would often pressure them to come to work anyway.

50.     Rainbow reserved sole discretion regarding whether and when to dispatch drivers to pick up riders.

51.     If the driver did not want to pick up an assigned fare, he was not free to refuse to do so.

52.     Rainbow strictly prohibited its drivers from picking up any fares other than the ones that Rainbow dispatched.

53.     Rainbow determined the fare that each customer paid.  Plaintiffs had no ability to negotiate these fares or to refuse to pick up a customer if the fare was unacceptable.  To the extent that Plaintiffs' car expenses increased, they had no discretion to alter Rainbow's fare structure to account for increased costs.

54.     Rainbow strictly prohibited its drivers from working for any other livery car service.

55.     Rainbow required Plaintiffs to attend meetings and/or training sessions at Rainbow's office.

56.     Rainbow maintained a rulebook that set forth mandatory requirements governing driver dress and grooming, vehicle cleanliness, and various aspects of required driver conduct – including a provision expressly prohibiting drivers from conducting any limousine business or picking up any passengers other than through Rainbow, and a specific schedule of "fines" that would be levied for breaches of the rules set forth in the rulebook.

57.     Rainbow reserved the right to fine drivers, and in fact did fine drivers, for actual or purported violations of the requirements set forth in the rulebook.

58.     Plaintiffs did not have established businesses outside of their more-than-full-time employment by Rainbow, nor did they ever desire or intend to be either franchisees or independent contractors.

59.     Rainbow reserved the right to assign fares, and in fact did assign fares, to preferred drivers, including the so-called "security team" – drivers who enforced Rainbow's strict rules and regulations, reported alleged violations to Rainbow, and received preferential treatment in return.

60.     Plaintiffs' wages were meager.  They generally received fares in the range of approximately $1000 to $1500 per week.  Given that Plaintiffs generally worked upwards of 100 hours per week or more, Plaintiffs' gross hourly wages, excluding expenses, generally ranged from approximately $8 to $12 per hour.

61.     Plaintiffs' expenses (including, among other things, vehicle leases, vehicle insurance, gas, two-way radio, and the weekly fees and fines that Rainbow charged and

8

imposed), depending on how initial vehicle investments were amortized, generally ranged from approximately $500 per week to significantly more.

62.     Given that Plaintiffs generally worked upwards of 100 hours per week or more, when these expenses are considered, Plaintiffs' effective net hourly wages generally fell well below the minimum wage.

63.     Defendants failed to post and keep posted in a conspicuous place in Rainbow's places of business a display containing notices of the employees' right to receive minimum wage and overtime pay at a rate of one-and-a-half times their regular rate in violation of 29 C.F.R. § 516.4.

64.     Defendants failed to post and keep posted in a conspicuous place in Rainbow's places of business a notice issued by the New York Department of Labor explaining the NYLL minimum wage provisions, in violation of NYLL Article 19, §§ 650 *et seq.*, and supporting regulations, including but not limited to N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.8 (2009).

65.     Defendants also failed to display a copy of sections 193 and 196-d of the NYLL regarding the prohibition on illegal deductions from wages and the illegality of employers demanding or accepting any portion of employees' tips in violation of NYLL § 198-d.

66.     Upon information and belief, Defendants failed to keep full and accurate records of Plaintiffs' hours and wages in violation of the FLSA and the NYLL.  29 U.S.C. § 211(c); NYLL § 661.

67.     Upon information and belief, Defendants knowingly, intentionally, and willfully deprived Plaintiffs of minimum wages and/or overtime pay and knowingly, intentionally, and willfully required Plaintiffs to provide and maintain tools of the trade.

68.     Upon information and belief, Defendants knew that the nonpayment of minimum wage and overtime pay and requiring Plaintiffs to provide and maintain tools of the trade would financially injure Plaintiffs.

### FIRST CAUSE OF ACTION
### (FLSA – Overtime Wages)

69.     Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

70.     At all relevant times, Plaintiffs were engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

71.     At all relevant times, Defendants were employers within the meaning of 29 U.S.C. § 203(d).

72.     Defendants failed to pay Plaintiffs overtime wages for hours worked in excess of forty per week at a wage rate of one-and-a-half times either their regular rate of pay or the minimum wage to which they were entitled, whichever is higher, in violation of 29 U.S.C. § 207(a)(1).

73.     Defendants' violation of the overtime requirements of the FLSA was willful.

74.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial.

75.     Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, statutory liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CAUSE OF ACTION
### (NYLL – Overtime Wages)

76.     Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

77.     At all relevant times, Plaintiffs were employees of Defendants, and Defendants were the employers of Plaintiffs, within the meaning of the NYLL §§ 190, 651(5), 652 and supporting New York State Department of Labor Regulations.

78.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs.

79.     Defendants failed to pay Plaintiffs the overtime wages to which they are entitled under the NYLL and supporting New York State Department of Labor Regulations.

80.     Defendants' violation of the overtime requirements of the NYLL was willful.

81.     Through their knowing and intentional failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per week, Defendants willfully violated the NYLL Article 19, §§ 650 et seq., and supporting New York State Department of Labor Regulations.

82.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial.

83.     Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, statutory liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## THIRD CAUSE OF ACTION
### (FLSA – Minimum Wages)

84.     Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

11

85.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of 29 U.S.C. § 203(d).

86.     At all relevant times, Plaintiffs were employees engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

87.     The federal minimum wage from January 1, 2005 through July 23, 2007 was $5.15 per hour.  Beginning on July 24, 2007, the minimum wage $5.85, until July 23, 2008, when the rate was raised to $6.55 per hour.  From July 24, 2008 through the end of the Plaintiffs' employment, the minimum wage rate has been $7.25 per hour.  29 U.S.C. § 206(a)(1).

88.     As pled in the Sixth Cause of Action below, Defendants unlawfully required Plaintiffs (other than Plaintiff Lim) to pay initial, weekly, and other fees to Defendants and to incur employment-related expenses, including without limitation expenses relating to vehicle procurement and maintenance.

89.     As an alternative to the Sixth Cause of Action below, to the extent that Defendants are not ordered to reimburse Plaintiffs for the employment-related expenses and fees that were unlawfully imposed on Plaintiffs or deducted from their wages each week (and to some extent even if employment-related expenses are not deducted), then Plaintiffs' net wages often dipped below the minimum wage requirements of the FLSA, 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35.

90.     Defendants' violation of the minimum wage requirements of the FLSA was willful.

91.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial.

12

92.     Plaintiffs are entitled to recover from Defendants, jointly and severally, their

unpaid minimum wages, statutory liquidated damages, reasonable attorneys' fees and costs of the

action, and pre- and post-judgment interest.

## FOURTH CAUSE OF ACTION
### (NYLL – Minimum Wages)

93.     Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth

herein.

94.     The minimum wage provisions of Article 19 of the NYLL and the supporting

New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs.

95.     Defendants were required to pay Plaintiffs a minimum wage at a rate of (a) $6.00

per hour for all hours worked from January 1, 2005 through December 31, 2005, (b) $6.75 per

hour for all hours worked from January 1, 2006 through the December 31, 2006, (c) $7.15 per

hour for all hours worked from January 1, 2007 through July 23, 2009, and (d) $7.25 per hour for

all hours worked since July 24, 2009 under NYLL § 652 and supporting New York State

Department of Labor Regulations, including but not limited to the N.Y. Comp. Codes R. & Regs.

tit. 12, § 142-2.1 (2009).

96.     As pled in the Sixth Cause of Action below, Defendants unlawfully required

Plaintiffs (other than Plaintiff Lim) to pay initial, weekly, and other fees to Defendants and to

incur employment-related expenses, including without limitation expenses relating to vehicle

procurement and maintenance.

97.     As an alternative to the Sixth Cause of Action below, to the extent that

Defendants are not ordered to reimburse Plaintiffs for the employment-related expenses that

were unlawfully imposed on Plaintiffs or deducted from their wages each week (and to some

extent even if employment-related expenses are not deducted), then Plaintiffs' net wages often dipped below the minimum wage requirements of the NYLL and supporting New York State Department of Labor Regulations.

98.     Through their knowing and intentional failure to pay minimum hourly wages to Plaintiffs, Defendants willfully violated the NYLL Article 19, § 650 et seq., and supporting New York State Department of Labor Regulations, including but not limited to the regulations in N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1 (2009).

99.     Defendants failed to post, in a conspicuous place in their places of business, a notice issued by the New York State Department of Labor summarizing minimum wage provisions, in violation of the NYLL and supporting New York State Department of Labor Regulations including but not limited to the regulations in N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.8 (2009).

100.     Defendants failed to furnish with every payment of wages to Plaintiffs a statement listing hours worked, rates paid, and gross wages, in violation of the NYLL and supporting New York State Department of Labor Regulations including but not limited to the regulations in N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.7 (2009).

101.     Through their knowing and intentional failure to pay minimum hourly wages to Plaintiffs, Defendants willfully violated NYLL Article 19, § 650 et seq., and supporting New York State Department of Labor Regulations, including but not limited to the regulations in N.Y. Comp. Codes R. & Regs. tit. 12, § 142 (2009).

102.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial, and they are entitled to recover from Defendants,

jointly and severally, their unpaid minimum wages, statutory liquidated damages, as well as reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## FIFTH CAUSE OF ACTION
### (NYLL - Spread of Hours Pay)

103.     Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

104.     Under New York law, an employee is entitled to an extra hour of wages for any day when the employee's "spread of hours" exceeds 10 hours.  12 N.Y.C.R.R. § 142-2.4 (2009). "Spread of hours" is defined as "the interval between the beginning and end of the workday."  12 N.Y.C.R.R. § 142-2.18 (2009).

105.     Plaintiffs regularly worked a spread of hours in excess of 10 hours a day.

106.     Defendants failed to pay Plaintiffs additional compensation of one hour's pay at the minimum hourly wage rate for each day during which they worked more than 10 hours in violation of the NYLL.

107.     Defendants' failure to pay Plaintiffs spread of hours wages was willful.

108.     As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial, and they are entitled to recover from Defendants, jointly and severally, damages in the amount of unpaid spread of hours wages, statutory liquidated damages, as well as reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SIXTH CAUSE OF ACTION
### (NYLL – Unlawful Deductions From Wages)

109.    Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

110.    Defendants required Plaintiffs (other than Plaintiff Lim) to purchase or lease specific types of vehicles, and to maintain those vehicles and pay all vehicle-related expenses, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 142-2.10 (2009).

111.    Defendants required Plaintiffs to pay an initial fee, weekly fees, and other fines to Rainbow, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 142-2.10 (2009).

112.    Defendants compelled Plaintiffs to pay other fees, such as monthly radio and voucher fees.

113.    All of these costs and fees were unlawfully imposed on or deducted from Plaintiffs' wages in violation of NYLL § 193.

114.    Defendants' violations of NYLL § 193 were willful.

115.    As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial, and they are entitled to recover from Defendants, jointly and severally, damages in the amount of the unlawful fees and expenses imposed on Plaintiffs, plus, pursuant to NYLL § 198, statutory liquidated damages, as well as reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### (NYLL – Unlawful Retention of Gratuities)

116.    Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

117.    The Defendants unlawfully demanded and retained some of the Plaintiffs' gratuities, in violation of New York Labor Law § 196-d.

16

118.   Defendants' violations were willful.

119.   As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial, and they are entitled to recover from Defendants, jointly and severally, damages in the amount of the unlawful fees and expenses imposed on Plaintiffs, statutory liquidated damages, as well as reasonably attorney's fees and costs of the action, and pre- and post- judgment interest.

## EIGHTH CAUSE OF ACTION
### (New York Franchise Act – Violation of Disclosure Requirements)

120.   The Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

121.   Defendants required Plaintiffs to sign a purported "franchise agreement" and to pay a purported "franchise fee" of ten thousand dollars.

122.    In addition to making up front-payments toward this "franchise fee," Plaintiffs had portions of the fee withheld from each of their regular wage payments.

123.   The New York Franchise Act ("Franchise Act"), N.Y. GBL § 683(8) prohibits the sale of a purported franchise "without first providing to the prospective franchisee, a copy of the offering prospectus, together with a copy of all proposed agreements relating to the sale of the franchise."

124.    The Franchise Act further requires that a franchisee provide a copy of the franchise prospectus, franchise agreement, and other relevant documentation to a potential franchisor at least ten days prior to the execution of a franchise agreement or "the receipt of any consideration in connection with the sale or proposed sale of a franchise." N.Y. GBL § 683(8).

125.   Despite charging Plaintiffs substantial "franchise fees," Defendants never

17

complied with these disclosure requirements and never lawfully informed Plaintiffs regarding the contract terms they had purportedly accepted.

126.    Defendants' violations were willful and material.

127.    As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial, and they are entitled to recover from Defendants, jointly and severally, damages in the amount of rescission of the purported "franchise agreement," plus, pursuant to N.Y. GBL § 691(1), reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest at the statutory rate of six percent interest per year.

### NINTH CAUSE OF ACTION
**(New York Franchise Act – Fraudulent and Unlawful Practices)**

128.    The Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

129.    The Franchise Act prohibits making any "untrue statement of a material fact" or concealing any material fact in connection with the "offer, sale or purchase of any franchise." N.Y. GBL § 687.

130.    The Franchise Act also makes it illegal to "[e]ngage in any act, practice, or course of business which operates or would operate as a fraud of deceit upon any person."  N.Y. GBL § 687.

131.    Despite requiring Plaintiffs to sign a "franchise agreement" and to make substantial payments of "franchise fees," Defendants failed to disclose any of the material terms of the purported franchise agreement, including, without limitation, the term providing for depreciation of $200 per year for each year the agreement is in effect of the value of the radio that Plaintiffs purportedly purchased through their "franchise fees."

132.    As a direct and proximate result of these violations, Plaintiffs have suffered damages in an amount to be determined at trial, and they are entitled to recover from Defendants, jointly and severally, damages in the amount of rescission of the purported "franchise agreement," plus, pursuant to N.Y. GBL § 691(1), reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest at the statutory rate of six percent interest per year.

WHEREFORE, Plaintiffs respectfully request that judgment be entered against Defendants as follows:

a.  Declaring Defendants' conduct complained of herein to be in violation of the FLSA, the NYLL, the New York Franchise Act, and their regulations;

b.  Awarding Plaintiffs overtime and minimum wages due under the FLSA and the NYLL and their regulations;

c.  Awarding Plaintiffs unpaid spread of hours wages due under the NYLL, and its regulations;

d.  Awarding Plaintiffs reimbursement for all of the unlawful fees, fines, and employment-related expenses they incurred during their employment;

e.  Awarding Plaintiffs reimbursement of all gratuities unlawfully retained by the Defendants;

f.  Awarding Plaintiffs liquidated damages pursuant to the FLSA and the NYLL for their willful violations;

g.  Awarding Plaintiffs damages pursuant to the Franchise Act;

h.  Awarding pre-judgment interest and post-judgment interest;

i.  Awarding attorneys' fees and costs; and

j.   Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 31, 2013

By: _____
       Eric Hecker (EH 0989)
           ehecker@chwllp.com
       Mariann Meier Wang (MW 7417)
           mwang@chwllp.com
       Alexander Goldenberg (AG 1128)
           agoldenberg@chwllp.com

       CUTI HECKER WANG LLP
       305 Broadway, Suite 607
       New York, New York 10007
       (212) 620-2600

       Nicole Hallett (NH 1588)
           nhallett@urbanjustice.org
       Amy Tai (AT 0366)
           atai@urbanjustice.org
       URBAN JUSTICE CENTER
       123 William Street, 16th Floor
       New York, New York 10038
       (646) 459-3026

       *Attorneys for Plaintiffs*